[Cite as *State v. Bickham*, 2026-Ohio-2999.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
MORROW COUNTY, OHIO

STATE OF OHIO

    Plaintiff - Appellee

-vs-

ERIC BICKHAM

    Defendant - Appellant

Case No. 25CA0009

<u>Opinion And Judgment Entry</u>

Appeal from the Morrow County Court of
Common Pleas, Case No. 2024CR0072

Judgment:  Affirmed

Date of Judgment Entry: July 31, 2026

BEFORE: Andrew J. King, Robert G. Montgomery, and Kevin W. Popham, Judges

APPEARANCES: Andrew Wick, For Plaintiff-Appellee; William T. Cramer For
Defendant-Appellant

OPINION

*Popham, J.,*

{¶1}    Appellant Eric Bickham ("Bickham") appeals his conviction after a jury trial in the Court of Common Pleas for Morrow County, Ohio. For the reasons below, we affirm.

**Facts and Procedural History**

{¶2}    The Morrow County Grand Jury indicted Bickham on one count of voyeurism, a fifth-degree felony in violation of R.C. 2907.08(C), and one count of tampering with evidence, a third-degree felony in violation of R.C. 2921.12(A)(1).

{¶3}    The evidence presented at trial established the following.

**Discovery of the Hidden Camera**

{¶4} E.B. testified that, in June 2024, she was twelve years old and lived with her mother, B.M., her three younger siblings, and B.M.'s boyfriend, Bickham.

{¶5} On June 29, 2024, B.M. left E.B. a note instructing her to clean her room and fold her clothes. While sorting through a laundry basket in her bedroom, E.B. discovered a camera hidden among blankets. E.B. turned the camera off and immediately called her mother. According to E.B., B.M. appeared shocked and told her that she was leaving work and coming home. B.M. then contacted Bickham and informed him that a camera had been found in E.B.'s room.

{¶6} Bickham arrived at the residence before B.M. According to the testimony, he took possession of the camera, went into the backyard, and attempted to destroy it, stating that he "didn't know if they were still watching us or not."

{¶7} When B.M. arrived home, she removed the SD card from the camera and inserted it into her computer to determine what the device had recorded. Approximately twenty minutes later, she contacted law enforcement.

**Law Enforcement Investigation**

{¶8} Chief Lakey of the Mount Gilead Police Department responded to a report that a hidden camera had been discovered in a juvenile's bedroom. Upon arrival, he spoke with E.B., B.M., and Bickham.

{¶9} Chief Lakey testified that Bickham denied any knowledge of the camera. Chief Lakey seized the camera and SD card and transported them to the police station for examination. After reviewing the contents, he returned to the residence and again questioned Bickham.

{¶10}   According to Chief Lakey, Bickham continued to deny any involvement even after being shown video footage recovered from the SD card. Chief Lakey subsequently placed Bickham under arrest.

**Digital Evidence Recovered**

{¶11}   The camera and SD card were admitted into evidence.

{¶12}   Several videos recovered from the SD card depicted Bickham manipulating the camera, adjusting its settings through an application on his cellular phone, activating night mode, and repositioning the device within the room. The videos showed a substantial portion of E.B.'s bedroom, including areas where E.B. would have been visible had she changed clothes or undressed.

{¶13}   Chief Lakey later obtained search warrants for Bickham's cellular phone and online accounts. The investigation revealed that shortly after Chief Lakey initially left the residence on the evening of June 29, 2024, Bickham searched the internet for "can you recover deleted files on an SD card."

{¶14}   Investigators also recovered an Amazon purchase confirmation showing that Bickham had purchased the camera.

**B.M.'s Testimony**

{¶15}   B.M. acknowledged that she remained in contact with Bickham while he was incarcerated. She deposited money into his commissary account, assisted him in obtaining legal counsel, and maintained regular communication with him.

{¶16}   B.M. testified that she felt sympathy for Bickham because he lacked family support. She further acknowledged that, after his release from jail, she continued to see him and engaged in at least one romantic encounter with him.

**Bickham's Testimony**

{¶17} Bickham testified in his own defense.

{¶18} According to Bickham, E.B. had been experiencing emotional difficulties stemming from an ongoing custody dispute between her parents. He testified that, during one argument, B.M. threatened to slit E.B.'s throat, and E.B. responded that she would hang herself. Bickham stated that, following that incident, he and B.M. discussed placing a camera in E.B.'s room to monitor her safety and ensure that she did not harm herself. He testified that both he and B.M. had access to the camera through an application installed on their phones.

{¶19} Bickham admitted that he initially suggested that a maintenance worker might have placed the camera in the room. He testified that he fabricated that explanation because he became frightened when law enforcement became involved and feared that E.B.'s father would seek custody of the children. According to Bickham, he and B.M. agreed on the maintenance-worker story shortly before police arrived.

{¶20} Bickham further testified that B.M. contacted law enforcement only because E.B. had called her father, who threatened to notify police if B.M. failed to do so.

{¶21} Bickham denied attempting to destroy the camera after it was discovered. Instead, he claimed that the device had already been cracked while being removed from its packaging. He also denied attempting to destroy the SD card or alter any video files. According to Bickham, he did not remove the SD card from the camera and did not have access to B.M.'s computer.

{¶22} Bickham testified that he and B.M. inserted the SD card into her computer together. He stated that B.M. had difficulty viewing the video files and was required to install

a media player before the recordings could be accessed. Bickham testified that he did not know whether any files were transferred from the SD card to the computer.

{¶23} Bickham further testified that he and B.M. continued their romantic relationship after his arrest. According to Bickham, they communicated daily through calls and text messages, met for dinner, and rented hotel rooms together. He disputed B.M.'s testimony that they had only one romantic encounter after his release, claiming instead that their relationship continued on a weekly basis.

**Verdict and Sentence**

{¶24} The jury found Bickham guilty of voyeurism and tampering with evidence.

{¶25} The trial court sentenced Bickham to thirty-six months in prison for tampering with evidence and twelve months in prison for voyeurism, with the sentences to be served concurrently. The court also imposed a discretionary two-year period of post-release control, classified Bickham as a Tier I sex offender, and assessed court costs.

**Assignment of Error**

{¶26} Bickham raises one assignment of error for our consideration,

{¶27} "I. THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO INSTRUCT THE JURY ON THE ELEMENT OF PURPOSE IN RELATION TO BOTH CHARGES."

{¶28} Bickham did not file a written request for specific jury instructions and did not object to the trial court's jury instructions. Based upon Bickham's failure to proffer instructions or object to the instructions and bring the issue to the trial court's attention for consideration, Bickham agrees that we must address his assignment of error under the plain error doctrine.

**Plain error doctrine**

{¶29} The failure to properly instruct a jury does not ordinarily constitute structural error. *Neder v. United States*, 527 U.S. 1 (1999). Rather, such errors are subject to harmless-error analysis under *Chapman v. California*, 386 U.S. 18 (1967). *Id.; see also State v. Campbell*, 2026-Ohio-335, ¶ 58 (5th Dist.).

{¶30} Pursuant to Crim.R. 52(B), appellate courts have discretion to correct plain errors or defects affecting substantial rights notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court. *State v. Rogers*, 2015-Ohio-2459, ¶ 22. To prevail under a plain-error analysis, the appellant bears the burden of establishing (1) an error, (2) that is plain or obvious, and (3) that affected the outcome of the trial. *Id.* All three elements must be satisfied before relief may be granted. *State v. Bailey*, 2022-Ohio-4407, ¶ 9, citing *State v. Barnes*, 2002-Ohio-68.

{¶31} To show an effect on substantial rights, the defendant must demonstrate a reasonable probability of prejudice. *Rogers*, at ¶ 22; *United States v. Dominguez Benitez*, 542 U.S. 74 (2004). Even where the elements are met, an appellate court is not required to correct the error and will do so only in exceptional circumstances to prevent a manifest miscarriage of justice. *Rogers* ¶ 23; *State v. Long*, 53 Ohio St. 2d 91 (1978), paragraph three of the syllabus.

{¶32} Bickham contends that both charges in the indictment require the jury to find that he acted purposefully. Accordingly, he contends that he was prejudiced by the trial court's failure to instruct the jury on the element of purposefully. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to

accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."
R.C. 2901.22(A).

**Voyeurism**

{¶33}  R.C. 2907.08(C) provides:

> No person shall *knowingly* commit trespass or otherwise secretly or surreptitiously videotape, film, photograph, broadcast, stream, or otherwise record a minor, in a place where a person has a reasonable expectation of privacy, *for the purpose of viewing the private areas of the minor*.

(Emphasis added.) "Private areas" include "the genitals, pubic area, buttocks, or female breast below the top of the areola, where nude or covered by an undergarment." R.C. 2907.01(R).

{¶34}  Assuming, without deciding, that the trial court should have provided the jury with the statutory definition of "purpose," Bickham cannot establish that the omission affected the outcome of the trial.

{¶35}  Bickham does not separately challenge the sufficiency or manifest weight of the evidence supporting his voyeurism conviction. Rather, he argues that, had the jury been instructed on the definition of "purposefully," it might have accepted his explanation that the camera was installed solely to monitor E.B.'s safety.

{¶36}  The record does not support that contention.

{¶37}  The evidence established that Bickham secretly placed a camera in the bedroom of a twelve-year-old child and positioned it to capture a substantial portion of the room, including areas where E.B.'s buttocks and other private areas would have been visible while she changed clothes or otherwise moved about her bedroom. Video recordings recovered from the SD card showed Bickham repeatedly adjusting the camera's position, activating night

mode, and manipulating the device through an application on his cellular phone. The jury also viewed footage depicting Bickham smiling into the camera while making those adjustments.

{¶38} Although Bickham testified that the camera was installed to monitor E.B. because of concerns that she might harm herself, the jury was not required to accept that explanation. Intent is rarely established through direct evidence and instead is ordinarily inferred from the surrounding facts and circumstances. *State v. Lott*, 51 Ohio St.3d 160, 168 (1990); *State v. Johnson*, 56 Ohio St.2d 35, 38 (1978). The determination of intent is a question for the jury, which may infer a defendant's purpose from his conduct and the natural consequences of his actions. *State v. Garner*, 74 Ohio St.3d 49, 60 (1995).

{¶39} Moreover, circumstantial evidence possesses the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus. The State was not required to disprove every innocent explanation for Bickham's conduct. *Id.* at 272.

{¶40} Viewed in its entirety, the evidence permitted the jury to conclude beyond a reasonable doubt that Bickham surreptitiously placed and adjusted the camera for the purpose of viewing E.B.'s private areas. Consequently, Bickham has failed to demonstrate a reasonable probability that the verdict would have been different had the trial court provided a more detailed instruction regarding purpose.

**Tampering with Evidence**

{¶41} R.C. 2921.12(A)(1) prohibits a person, knowing that an official proceeding or investigation is in progress or likely to be instituted, from altering, destroying, concealing, or removing evidence "with purpose to impair its value or availability" in that proceeding or investigation.

**{¶42}** Again, even assuming that the trial court should have instructed the jury on the statutory definition of purpose, Bickham cannot demonstrate prejudice.

**{¶43}** E.B. testified that after the camera was discovered, Bickham took possession of it and attempted to damage it.

**{¶44}** Chief Lakey's body-camera footage documented his initial response to the residence and his subsequent return later that evening. During those encounters, Bickham repeatedly denied any knowledge of the camera and continued to express surprise that it had been found in E.B.'s bedroom. The jury also viewed the camera itself and the SD card, both of which were admitted into evidence.

**{¶45}** Further investigation revealed that several files had been deleted from the SD card. Chief Lakey testified that he was able to recover those files and that he also recovered internet-search history from Bickham's phone showing that, approximately seven minutes after law enforcement initially left the residence, Bickham searched how to recover deleted photographs from a memory card.

**{¶46}** Although Bickham denied damaging the camera, deleting files, or attempting to conceal evidence, the jury was free to reject his testimony. His admitted dishonesty regarding the origin and placement of the camera, coupled with evidence that he attempted to damage the device and searched for information concerning deleted files immediately after police became involved, provided compelling circumstantial evidence of his intent.

**{¶47}** Purpose, like knowledge, is often established through circumstantial evidence. A jury may infer a defendant's purpose from conduct that naturally tends to conceal, destroy, or impair evidence. Here, the evidence reasonably supported the conclusion that Bickham

acted with the purpose of impairing the value or availability of the camera and its contents in a likely criminal investigation.

{¶48} Accordingly, Bickham has failed to demonstrate a reasonable probability that the jury would have reached a different verdict had it received a more detailed instruction defining purpose.

**Conclusion**

{¶49} Bickham has not established that the trial court's failure to define "purpose" affected his substantial rights. The evidence supporting the purpose element of both offenses was substantial, and the jury reasonably could have found that element proven beyond a reasonable doubt even under the statutory definition set forth in R.C. 2901.22(A).

{¶50} Accordingly, any instructional error was harmless beyond a reasonable doubt and did not affect the outcome of the trial. We decline to find a manifest injustice warranting the extraordinary step of finding plain error in the trial court's failure to instruct the jury on the definition of purpose.  Bickham's sole assignment of error is overruled.

{¶51} For the reasons stated in our Opinion, the judgment of the Morrow County Court of Common Pleas is affirmed.

{¶52} Costs to be paid by Appellant Eric Bickham.


By: Popham, J.

King, P.J. and

Montgomery, J., concur